IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHS INC., and CHS MCPHERSON
REFINERY INC.,

                    Plaintiffs,        Civil Action No.

v.

NUSSER FUELS, LLC, J&T VENTURE,
LLC, JAMES NUSSER, and TRACY
NUSSER,

                    Defendants

**VERIFIED COMPLAINT FOR COUNTERFEITING
AND TRADEMARK INFRINGEMENT**

For its Complaint, Plaintiffs CHS Inc. ("CHS") and CHS McPherson Refinery Inc. allege as follows:

**INTRODUCTION**

1. Defendants have knowingly sold, delivered, and transported counterfeit diesel fuel that unlawfully copies and infringes CHS's federally registered trademarks for its premium grades of diesel, and falsely designated non-premium diesel fuel as CHS's premium grades of diesel fuels.

2. Defendants are selling, transporting, and delivering regular No. 2 Grade Diesel fuel, falsely identifying the fuel as CHS's premium diesel fuels, using CHS's federally registered trademarks. Defendants' actions are unauthorized, confusing, and deceive consumers, thereby harming Plaintiffs' goodwill and reputation.

1

3. Plaintiffs bring this action for direct and contributory counterfeiting, trademark infringement, unfair competition, and false designations of origin in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*. Plaintiffs seek (a) an *ex parte* restraining order, and preliminary and permanent injunctive relief, (b) a full accounting of all transactions in which Defendants unlawfully sold diesel fuels, (c) an accounting of Defendants' profits, and (d) all other appropriate relief arising from Defendants' willful acts of trademark infringement, counterfeiting, and unfair competition.

## PARTIES

4. CHS is a cooperative corporation organized and existing under the laws of the State of Minnesota, with principal offices at 5500 Cenex Drive, Inver Grove Heights, MN 55077-1721. CHS is authorized and registered to do business in Kansas and is in good standing under the laws of the State of Kansas.

5. CHS McPherson Refinery Inc. is a Kansas corporation, and CHS's wholly owned subsidiary. Its principal offices are located at 2000 S. Main St., McPherson, KS 67460. CHS McPherson Refinery Inc. is authorized to do business in Kansas and is in good standing under the laws of the State of Kansas.

6. Defendant Nusser Fuels, LLC ("Nusser") is a limited liability company organized and existing under the laws of the State of Kansas with principal offices in Jetmore, KS. John D. Beverlin II is Nusser's resident agent for service of process at 420 S. Jackson, St. 110, Pratt, KS 67124. Upon information and belief, all Nusser's members are Kansas citizens.

7. Defendant J&T Venture, LLC ("J&T") is a limited liability company organized and existing under the laws of the State of Kansas with principal offices in Jetmore, KS. John D.

Beverlin II is J&T's resident agent for service of process at 420 S. Jackson, St. 110, Pratt, KS 67124. Upon information and belief, all J& T's members are Kansas citizens.

8. Defendant James Nusser is a Kansas citizen, and owns membership interests in Nusser and J&T. Upon information and belief, Mr. Nusser is involved in and responsible for Nusser's and J&T's operations, including those involved in and material to CHS's claims.

9. Defendant Tracy Nusser is a Kansas citizen and owns membership interests in Nusser and J&T. Upon information and belief, Ms. Nusser is involved in and responsible for Nusser's and J&T's operations, including those involved in and material to CHS's claims.

10. At all times material to Plaintiffs' claims, the Defendants acted together and in combination for the purpose of infringing upon CHS's trademarks, and fraudulently selling, transporting, and delivering counterfeit diesel fuel.

## JURISDICTION AND VENUE

11. This is an action for counterfeiting and infringement of a federally registered trademark in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)) and for false designations of origin, and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

12. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because it involves substantial claims arising under federal law.

13. This Court has personal jurisdiction over Defendants as all are citizens or residents of the State of Kansas. Defendants' actions of selling counterfeits of CHS's premium grade diesel fuel and infringing CHS's registered marks were committed in Kansas. All Defendants have caused injury to Plaintiffs within Kansas.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Defendants may be found or transact business in Kansas and a substantial part of the events giving rise to Plaintiffs' claims occurred and are continuing to occur in Kansas.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

15. CHS is a global agribusiness. As part of its business, it operates petroleum refineries and pipelines, and produces and markets lubricants, fuels, and related products.

16. CHS has marketed, advertised, and sold its diesel fuels using its well-known CENEX® trademark. In addition, CHS has marketed, advertised, and sold specific grades of its diesel fuels identified by specific trademarks. All these trademarks are federally registered and are incontestable by operation of federal law.

17. CHS owns a number of federal trademark registrations for its trademarks on the Principal Register of the United States Patent and Trademark Office, including, but no limited to, the following:

| **Trademark** | **U.S. Reg. No.** | **Reg. Date** |
|---|---|---|
| [CENEX DESIGN] | 1070076 | 1977 |
| CENEX ROADMASTER XL | 2080468 | 1997 |
| CHS | 2759469 | 2003 |
| [CHS DESIGN] | 3121156 | 2006 |
| RUBY | 1522334 | 1989 |
| RUBY FIELDMASTER | 2801984 | 2004 |

True copies of these registrations and related filings are attached as Exhibit 1. The right to use these trademarks is incontestable under 15 U.S.C. § 1065. The trademarks are collectively identified in this Complaint as the "CHS Diesel Trademarks."

18. Since 1931, CHS and its predecessors have operated a petroleum refinery in McPherson, KS (the "McPherson Refinery"). The McPherson Refinery is owned and operated by CHS's wholly owned subsidiary, CHS McPherson Refinery, Inc.

19. The McPherson Refinery refines and produces gasoline and diesel fuels and provides fuel throughout the Midwest and other areas of the United States.

20. Plaintiffs operate a terminal in McPherson, KS, at which they supply CHS refined fuels to wholesalers and distributors. The terminal is prominently identified by the CHS name and trademark.

21. At the terminal, Plaintiffs sell CHS refined diesel fuels to wholesalers and distributers which maintain an available supply of such fuel at the terminal. As part of the McPherson Refinery's operations, Plaintiffs also sell or exchange fuels at the terminal for other producers.

22. The wholesalers and distributors referenced in ¶21 sell the fuel to retailers. In most instances, the wholesalers and distributors take delivery and possession of the diesel fuel at the CHS terminal through a carrier or transporter the wholesalers and distributors retain. The carrier or transporter delivers the diesel fuel as the wholesalers and distributors instruct.

23. The diesel fuel is sold to the wholesalers and distributors based upon the terminal's posted price on the date of purchase. The invoice for the transaction is processed separately.

24. When the carrier or transporter takes delivery of diesel fuel on behalf of a wholesaler and distributor, Plaintiffs' terminal employees generate a "Motor Carrier Straight Bill of Lading" as required by the United States Department of Transportation (the "BOL").

25. The BOL identifies (a) the "Supplier" of the fuel, (b) the "Consignee" of the fuel, and which is the distributor or wholesaler of the fuel, and the (c) the "Carrier" of the fuel which takes delivery of the fuel and transports it as the retailer instructs.

26. The BOL also identifies (a) the "Product Description" for the fuel, *i.e.,* its type, grade and other information, (b) the amount of fuel delivered to the Carrier measured in gallons, and (c) the date and time the Carrier took possession of the load. An example of a BOL is attached as Exhibit 2.

27. The BOLs prominently bear the CHS trademark and the CHS name.

28. For each load of fuel purchased and loaded at the terminal, Plaintiffs separately maintain a record of all the information identified in ¶¶ 24-26 above.

29. The regular grade of diesel fuel sold and delivered at the terminal is commonly identified as "Diesel No. 2" or "No. 2 Grade Diesel" by all producers and suppliers in the industry.

30. Proprietary Cenex® premium diesel additive packages are injected into No. 2 Grade Diesel at the CHS terminal to create CHS's premium grade diesel fuels. This allow CHS to maintain strict quality control standards for its diesel fuels, and to ensure that its premium grade fuels and No. 2 Grade Diesel fuel are properly identified when delivered at the terminal.

31. CHS identifies, markets, and sells its premium diesel fuels (the "Cenex® Premium Diesel Fuels") using the CHS Diesel Trademarks, including "Ruby," "Fieldmaster," "Roadmaster," and combinations or derivatives of such trademarks.

32. The daily posted price for the Cenex® Premium Diesel Fuels is typically 4.75 to 5.15 cents per gallon more that the price for No. 2 Grade Diesel.

33. Plaintiffs also produce No. 2 Grade Diesel fuel for other suppliers who sell No. 2 Grade Diesel fuel to distributors and wholesalers.

34. CHS spends significant funds to enhance and promote its Cenex® Premium Diesel Fuels over No. 2 Grade Diesel fuel.

35. The Cenex® Premium Diesel Fuels have chemical "tags" that allow Plaintiffs to determine whether fuel, in fact, is a Cenex® Premium Diesel Fuel. No. 2 Grade Diesel fuel does not contain the chemical tags.

36. Farmers purchase additional farm equipment warranties, the terms of which require the farmers to use Cenex® Premium Diesel Fuels for such farm equipment. If the farmers do not use Cenex® Premium Diesel Fuels for the farm equipment, the warranties are voided.

37. Defendant Nusser enters contracts for the sale, purchase, and delivery of diesel fuel to bulk users such as county and municipal governments. These agreements are between Nusser and the bulk purchasers.

38. As part of these transactions, J&T transports and delivers the diesel fuels to the bulk purchasers on behalf of Nusser and at Nusser's directions.

49. As generally described at ¶¶20-28, above, Nusser purchased diesel fuels from a distributor, and J&T obtained and took possession of the diesel fuel at the CHS terminal to deliver to bulk purchasers as Nusser directed.

40. At all times, Defendants James Nusser and Tracy Nusser controlled, managed, and directed Nusser and J&T with regard to Nusser's and J&T's purchase, sale, transportation, and delivery of diesel fuels from the CHS terminal as described in ¶¶20-28, above.

41. Without any permission, authorization, or license from CHS, the Defendants individually and in concert with each other, employed a Scheme by which they knowingly and willfully (a) purchased, obtained, and took delivery of No. 2 Grade Diesel fuel from the CHS terminal, (b) used altered and falsified CHS terminal BOLs that changed the description of the diesel fuel from No. 2 Grade Diesel fuel to Cenex® Premium Diesel Fuels identified by the CHS Diesel Trademarks, and (c) sold and delivered the No. 2 Grade Diesel to bulk purchasers and end-users falsely identified and designated as Cenex® Premium Diesel Fuels.

42. The Scheme allowed Defendants to fraudulently reap increased profits by selling lower-priced No. 2 Grade Diesel fuel at the higher price associated with Cenex® Premium Diesel Fuels. It also allowed Defendants to unfairly compete with other sellers of diesel fuel, including premium grade diesel fuels.

43. An example of the Scheme is reflected by the transaction involving BOL# 647549. The BOL documents the Defendants' purchase of diesel fuel at the CHS terminal on March 14, 2024, (*See* BOL# 647549, attached as Exhibit 2). The BOL accurately shows that J&T obtained a load of No. 2 Grade Diesel fuel produced by Plaintiffs and sold to Defendants by Garden City Co-op, Inc.

44. The original product description of BOL# 647549 was fraudulently changed from No. 2 Grade Diesel to Cenex® Premium Diesel Fuels, specifically using the CHS Diesel Trademarks "Ruby Fieldmaster" and "Roadmaster." (*See* Fraudulent BOL# 647549, attached as Exhibit 3). The false production description also identifies the diesel fuel as premium with the designation of "PRM DIESEL." (*Id.*). Fraudulent BOL# 647549 was the document provided to the bulk-purchaser that purchased the fuel from Nusser.

45. Another example of the Scheme is reflected by the transaction involving BOL# 651224. The BOL documents the Defendants' purchase of diesel fuel from a third-party at the CHS terminal on May 15, 2024, (*See* BOL# 651224, attached as Exhibit 4). The BOL accurately shows that Defendants purchased a load of No. 2 Grade Diesel fuel from Fuel Masters, Inc., and J&T took delivery of No. 2 Grade Diesel fuel at the CHS terminal. The BOL# 651224 identifies the producer as Flint Hills Resources, LP which obtains No. 2 Grade Diesel fuel from CHS. Flint Hills Resources, LP and Fuel Masters, Inc. have no right to use the CHS Deisel Trademarks regarding this transaction.

46. Upon information and belief, Defendants altered BOL# 651224 to fraudulently change the product description of the fuel from No. 2 Grade Diesel to Cenex® Premium Diesel Fuels, specifically using the CHS Diesel Trademarks "Ruby Fieldmaster" and "Roadmaster." (*See* Fraudulent BOL# 651224, attached as Exhibit 5). The false production description also identifies the diesel fuel as premium with the designation of "PRM DIESEL." (*Id.*).

47. Fraudulent BOL# 651224 also includes alterations that changed (a) the identified "Supplier" from Flint Hills Resources, LP to CHS, and (b) the identified "Consignee" from Fuel Masters LLC to Garden City Coop. Garden City Coop is authorized to sell Cenex® Premium Diesel Fuels and use the CHS Diesel Trademarks. Defendants provided Fraudulent BOL# 647549 to the bulk-purchaser that purchased the fuel.

## COUNT I
## FEDERAL TRADEMARK COUNTERFEITING (15 U.S.C. § 1114(1))

48. Plaintiffs incorporate by reference the allegations of ¶¶1-47 above, and allege Defendants have counterfeited the CHS Diesel Trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), as follows:

9

49. CHS has used the CHS Diesel Trademarks continuously in United States commerce for over fifty (50) years for its Cenex® Premium Diesel Fuels and to identify CHS as the source of the Cenex® Premium Diesel Fuels.

50. CHS has invested substantial time, effort, and financial resources in using and promoting its CHS Diesel Trademarks in connection with the marketing and sale of its Cenex® Premium Diesel Fuels in interstate commerce. The consuming public recognizes the CHS Diesel Trademarks and associates them with Cenex® Premium Diesel Fuels and CHS as the source of the Cenex® Premium Diesel Fuels.

51. The CHS Diesel Trademarks are registered on the Principal Register of the United States Patent and Trademark Office for diesel fuels.

52. The No. 2 Grade Diesel fuel that Defendants sell as Cenex® Premium Diesel Fuels and identify with the CHS Diesel Trademarks, constitutes "Counterfeit Goods" under applicable statutes and legal standards.

53. The CHS Diesel Trademarks that Defendants used to identify and sell the Counterfeit Goods as Cenex® Premium Diesel Fuels in commerce are spurious marks that are identical to the genuine CHS Diesel Trademarks.

54. Defendants' use of the CHS Diesel Trademarks to identify the Counterfeit Goods as Cenex® Premium Diesel Fuels is likely to cause confusion or mistake or to deceive consumers into believing that the Counterfeit Goods are Cenex® Premium Diesel Fuels and CHS is the source of the Counterfeit Goods. CHS did not authorize or license the use of the CHS Diesel Trademarks to identify Counterfeit Goods sold by Defendants as Cenex® Premium Diesel Fuels

55. Defendants offered and sold the Counterfeit Goods using the CHS Diesel Trademarks to identify the Counterfeit Goods Cenex® Premium Diesel Fuels with the intention of misleading, deceiving, or confusing consumers and of trading on CHS's reputation and goodwill, and the recognized quality of the Cenex® Premium Diesel Fuels.

56. Defendants' unauthorized use of the CHS Diesel Trademarks in interstate commerce to identify the Counterfeit Goods as Cenex® Premium Diesel Fuels, as described above, constitutes trademark counterfeiting under 15 U.S.C. § 1114(1).

57. As a direct and proximate result of Defendants' trademark counterfeiting, CHS has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Defendants have unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

58. Defendants' acts of counterfeiting will cause further irreparable injury to CHS if Defendants are not restrained by this Court from further violation of CHS's rights. CHS has no adequate remedy at law.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

59. Plaintiffs incorporate by reference the allegations of ¶¶1-58 above, and allege Defendants unlawfully infringed and misappropriated the CHS Diesel Trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), as follows:

60. CHS has used the CHS Diesel Trademarks continuously in United States commerce for over fifty (50) years for its Cenex® Premium Diesel Fuels and to identify CHS as the source of the Cenex® Premium Diesel Fuels.

61. CHS has invested substantial time, effort, and financial resources in using and promoting its CHS Diesel Trademarks in connection with the marketing and sale of its Cenex®

Premium Diesel Fuels in interstate commerce. The consuming public recognizes the CHS Diesel Trademarks and associates them with Cenex® Premium Diesel Fuels and CHS as the source of the Cenex® Premium Diesel Fuels.

62. The CHS Diesel Trademarks are registered on the Principal Register of the United States Patent and Trademark Office for diesel fuels.

63. Defendants' use of the CHS Diesel Trademarks trademark to identify diesel fuel as Cenex® Premium Diesel Fuels is likely to cause confusion or mistake or to deceive consumers into believing that the Counterfeit Goods are Cenex® Premium Diesel Fuels and CHS is the source of the Counterfeit Goods. CHS did not authorize or license the use of the CHS Diesel Trademarks to identify Counterfeit Goods sold by Defendants as Cenex® Premium Diesel Fuels

64. Defendants have used the CHS Diesel Trademarks with the intention of misleading, deceiving, or confusing consumers as to the nature, attributes, quality, and origin of diesel fuels Defendants sold, and of trading on CHS's reputation and goodwill. Defendants have engaged in its infringing activity despite having actual or constructive notice of CHS's federal registration rights under 15 U.S.C. § 1072, and despite having actual knowledge of CHS's use of the CHS Diesel Trademarks, Defendants' use of the CHS Diesel Trademarks constitutes willful, deliberate, and intentional trademark infringement.

65. Defendants' unauthorized use of the CHS Diesel Trademarks in interstate commerce as described above constitutes trademark infringement under 15 U.S.C. § 1114(1) and has caused and is likely to continue to cause consumer confusion, mistake, or deception.

66. As a direct and proximate result of Defendants' trademark infringement, CHS has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and

Defendants' have unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

67. Defendants' acts of infringement will cause further irreparable injury to CHS if this Court does not restrain Defendants from further violating CHS's rights. CHS has no adequate remedy at law.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Court:

A. Enter judgment that Defendants have violated 15 U.S.C. §§ 1114(1) and 1125(a).

B. Issue a temporary restraining order and preliminary injunction:

1. Restraining, enjoining and prohibiting Defendants and each of their agents, representatives, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them from:

(a) Using in any manner the CHS Diesel Trademarks in distributing, transporting, selling, offering for sale, selling, or advertising any and all diesel fuels as Cenex® Premium Diesel Fuels:

2. Requiring Defendants to fully account for (a) every sale, purchase, distribution, and delivery of diesel fuel identified as CHS Cenex® Premium Diesel Fuels they made since January 1, 2020; and (b) every sale, purchase, distribution, and delivery of No. 2 Grade Diesel fuel they made since January 1, 2020;

3. Requiring Defendants to send, by email and/or mail through the United States Postal Service, to each known customer that purchased diesel fuel from Defendants identified as CHS Cenex® Premium Diesel Fuels or which used the CHS Diesel Trademarks since January 1, 2019, that the Defendants have been involved in selling diesel fuels falsely identified as Cenex® Premium Diesel Fuels or which were falsely

identified by the CHS Diesel Trademarks, and that the diesel fuel the customer purchased was not a Cenex® Premium Diesel Fuels;

C. After a hearing on the merits, issue a permanent injunction prohibiting Defendants from manufacturing, distributing, advertising, selling, or attempting to sell merchandise described in paragraph B.1, above;

D. After a hearing on the merits, grant Plaintiffs an award of either their actual damages or Defendants' profits, whichever is greater, trebled pursuant to the provisions of 15 U.S.C. § 1117, or statutory damages at Plaintiffs' election, and grant Plaintiffs their costs and reasonable attorneys' fees associated with pursuing this action, and prejudgment interest, against Defendants: and

E. Grant Plaintiffs such other and further relief as the Court may deem just and equitable.

        KLENDA AUSTERMAN LLC

        By: <u>*/s/Christopher A. McElgunn*</u>
        Christopher A. McElgunn, #13359
        301 N. Main, St. 1600
        Wichita, KS 67202
        Tel: (316) 267-0331
        Fax:(316) 267-0333
        cmcelgunn@klendalaw.com
        *Attorneys for Plaintiff CHS Inc.*

## VERIFICATION

I, Matt Mohs, declare as follows:

1. I am the Vice President - Sales of CHS Inc.

2. I have read the foregoing Complaint and declare under penalty of perjury imposed by the laws of the United States of America that the factual allegations are true and accurate to my own knowledge, information, and belief.

Date: October 15, 2024.

Matt Mohs, Vice President - Sales